## Penn Cress Ice Cream Co. v. Stites et al.

*Wilhelm E. Shissler* and *John McI. Smith*, of *Nauman, Smith & Hurlock*, for plaintiff.

*Willis F. Daniels* and *Harold W. Swope*, for intervenor.

*Frank E. Coho*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for defendants.

GREER, J., Forty-seventh Judicial District, specially presiding, June 23, 1941.—The amended bill in this ac-

tion prays for an injunction to restrain defendants from payment on a contract with the Commonwealth of Pennsylvania for the delivery of a year's supply of milk to Cresson Sanatorium, and that the contract be declared void on the score that it violated the law respecting minimum prices, in that there was added to the homogenized pasteurized milk an additional content of vitamin D, a distinct substance or commodity.

The prayer for the injunction was refused, and the contract, which expires June 17, 1941, has since been in process of performance.

Defendant replies that in adding vitamin D there is no unlawful service or added commodity forbidden by law.

### Findings of fact

1. Plaintiff is a corporation and is affected by the orders of the Pennsylvania Milk Control Commission, particularly general order no. A-12, dated June 23, 1937, area no. 9.

2. Dr. Stites is the Medical Director of the State Sanatorium No. 2, Cresson, Pa., and Dr. Shaw is Secretary of the Department of Health of the Commonwealth.

3. On or about June 5, 1940, defendants issued purchase proposals for State Sanatorium No. 2 calling for daily delivery of approximately three hundred gallons of homogenized pasteurized milk, having not less than 3.8 percent butter fat, with vitamin D added, to said Sanatorium No. 2, Cresson, Pa.; the proposal providing that nothing therein contained should conflict with the rules and regulations established by the Milk Control Board for area no. 9, in which area Cresson is located.

4. General order no. A-12 aforesaid provides the wholesale price for hospitals et al., and sale in quantities of 200 quarts or over should be .0975 per quart for milk not exceeding four percent butter fat, but was silent as to the addition of vitamin D.

5. Three dealers, including the intervenor, bid .39 per gallon. Plaintiff bid .399 per gallon, and the bid of the intervenor was accepted and a contract entered into for one year's supply.

6. The Milk Control Board has recognized in other areas that vitamin D is a distinct commodity, and has fixed on that account a higher price for milk, adding 1 cent per quart for this reason.

7. The cost of Vitex Vitamin D to plaintiff is $5.75 for 3,000 quarts.

## Discussion

Section 807, art. VIII, of the Act of April 28, 1937, P. L. 417, makes it unlawful for a milk dealer to sell milk at any price below the minimum or above the maximum price applicable to a particular transaction, and further provides no method shall be lawful whereby milk is sold at a price less than the minimum, whether by free service or by a combined price for such milk together with another commodity.

Inasmuch as general order A-12, sec. 2, is silent as to the added substance vitamin D, but includes homogenized milk in its content, plaintiff's case fails insofar as relates to the "service" required in homogenizing milk.

The second question advanced, that of the addition of vitamin D, presents a more serious problem. Plaintiff contends that the addition of this substance or commodity because of its cost constitutes a violation of the minimum price provisions of section 807, supra. That there is an added cost to the seller is not disputed. Its amount is stipulated as found in no. 7 of our findings of fact. Defendant and intervenor, however, contend that this fact is negligible because such a dealer is not selling below the minimum either by giving free service or adding a commodity, and in support of this position they argue that, because raw milk contains some of the elements of vitamin D; to raise its content even at added cost to the dealer is not a violation of law, because such addition is a reasonable trade practice, violating

neither the letter nor the spirit of the Milk Control Act, citing Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, which case, by a divided court, held the giving of trading stamps with the purchase of merchandise did not violate the Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §§7-11.

In our opinion the facts are too dissimilar to permit that case to be controlling, excepting in one particular hereinafter to be mentioned. Were we to hold that the addition of vitamin D is negligible, in the absence of any mention in the orders of the board of that substance, what then would forbid the inclusion in a future proposal for bids of other elements such as other vitamins which may be considered beneficial to the health of drinkers of raw milk? And that precisely that inequality, uncertainty and ambiguity will result is evidenced by the fact that in some area the addition of vitamin D alone is expressly mentioned in the orders of the board, and an increase also of 1 cent per quart permitted by reason thereof.

To invoke the maxim de minimis non curat lex is not apropos when the cost of the addition of vitamin D is calculated for a contract of the size under consideration. Three hundred gallons per day for a period of one year equals 109,500 gallons, and every 750 gallons would have by the augmentation of vitamin D an additional cost to the seller of $5.75. The aggregate appears to us to be no negligible amount. Moreover, this interpretation thus sanctioned, other substances could likewise be called for in bids contrary to the board's order. Administrative interpretations cannot prevail in the face of stubborn facts which prove their lack of justification.

Defendants, however, urge a situation in their favor which we cannot ignore. They point out that, as the contract is about to expire, the controversy becomes moot or academic, and there is force to this argument. It is also to be kept in mind that we are here dealing

with an instrumentality of the Commonwealth, and while we recognize "no divinity which doth hedge a king", yet a decent respect for our governmental agencies requires that we be not over-zealous in dealing with their acts either of omission or commission, when, as here, the factor of time has brought about a change of circumstances.

"While equitable jurisdiction is to be determined with reference to the situation existing at the time when the bill is filed, the relief to be accorded by the decree is governed by the conditions which are shown to exist at the time of making thereof, and not by the circumstances attending the inception of the litigation. Consequently, if the court finds that on the case presented by the bill, it cannot make its decree effective, the suit will be dismissed without prejudice. On this point it has been observed that the duty of a court of equity is to decide actual controversies by a decree that can be carried into effect, and not to give opinions on moot questions or to declare rules of law that cannot affect the matter in issue in the case before it": 19 Am. Juris. 283.

Inasmuch as the decree prayed for would be ineffective, as the contract is now practically performed, we are constrained to dismiss the bill without prejudice.

### Conclusions of law

1. The emulsion Vitex Vitamin D is a commodity, which, when applied to large quantities of milk, adds a material cost to the seller.

2. In addition to the cost of the commodity itself, the work of assaying and supervising are necessary and require an appreciable expenditure for the service thus performed.

3. The contract with the Hoffman Ice Cream Company is in violation of section 807 of the Act of April 28, 1937, P. L. 417, art. VIII, in that homogenized pasteurized milk with vitamin D added was sold at a price less

than the combined aggregate price for fluid milk sold in bulk as prescribed in section 4(*d*) of general order A-12, effective July 1, 1937, the cost of the addition of vitamin D, a commodity, being an appreciable one.

4. The time factor and change of circumstances render the decree prayed for, even if granted, ineffective.

As to the disposition of the costs, we have concluded to place them upon the intervenor, because it has been the beneficiary of an invalid contract.

Wherefore we enter the following

### Decree nisi

And now, June 23, 1941, bill dismissed at the cost of the Hoffman Ice Cream Company, intervenor.